UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK PARKER, JR.,

Petitioner,                          Case Number 2:08-CV-13824
                                     Honorable Denise Page Hood

v.

RAYMOND D. BOOKER,

Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND GRANTING CERTIFICATE OF APPEALABILITY**

     This matter is before the Court on Petitioner Jack Parker Jr.'s petition for writ of habeas

corpus, filed under 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Newberry

Correctional Facility in Newberry, Michigan and is serving a 50-to-100 year prison sentence. The

sentence results from his Oakland Circuit Court jury trial conviction of one count of second-degree

murder, MICH. COMP. LAWS 750.317. For the reasons that follow the Court will deny the petition

but grant Petitioner a certificate of appealability.

### I. Facts

     This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On August 9, 2000, defendant frantically knocked on a neighbor's door and
> asked the neighbor to call "911." Two people at the neighbor's apartment, who were
> trained in cardiopulmonary resuscitation ("CPR"), went to defendant's apartment to
> offer aid and found Brady lying naked on a bed, not breathing. They performed CPR
> until an ambulance arrived to take Brady to a hospital. Brady arrived at the hospital
> with numerous bruises of varying ages across her chest, abdomen and side, swelling

around her face, and a fractured arm and nose. She was immediately placed on a
ventilator, but was determined to be in an irreversible coma with virtually no chance
of recovery and, six days later, was removed from life support because of the
severity of her injuries. She died shortly thereafter. An autopsy revealed that Brady
died because her brain was deprived of oxygen due to an obstruction of her airway,
which the medical examiner opined was sustained in an assault.

*People v. Parker*, 2007 Mich. App. LEXIS 368, 1-2 (Mich. Ct. App. Feb. 15, 2007).

On October 28, 2002 - more than two years after Brady's death - Petitioner was charged in

Oakland Circuit Court with open murder. At the preliminary examination Petitioner's appointed

counsel waived Petitioner's speedy trial rights and his rights under Michigan's 180-day-rule.

Prior to trial, Petitioner twice successfully moved to have substitute counsel appointed.

Petitioner was dissatisfied with the delays caused by his first two attorneys and was dissatisfied with

their pretrial preparations. Finally, on April 14, 2005, jury selection began for trial with a third

appointed attorney representing Petitioner.

At trial, Sandra Brady's son, Kevin Brady, testified that his mother was an alcoholic who

drank almost every day. In July of 2000, Kevin found his mother at a rescue mission. She had just

been released from a hospital. Her face was swollen and she had staples in the back of her head.

She told her son that she had been beaten by a man named "Jack." Kevin took his mother to his

house for the night, but he did not have any contact with her again until he received a call from a

hospital on August 10, 2000, informing him that his mother was on life support. She had no brain

activity and could not breath on her own. After consultation with doctors and other family members,

his mother was removed from a ventilator and died.

George Baker testified that he had hired Petitioner in July of 1999 to work as a machine

assembler. Baker eventually fired Petitioner, but stayed in close contact with him. While visiting

Petitioner's apartment, Baker saw Petitioner degrade and assault Brady. On one occassion, Baker

saw Petitioner bash his fist onto Brady's head. Baker warned Brady to leave the apartment before Petitioner killed her.

On another occassion, Petitioner called Baker and told him that he had beat-up Brady. Baker told Petitioner to take her to the hospital. A few days later Brady nevertheless returned to Petitioner's apartment. Petitioner called Baker again and told him that Brady was dizzy and staggering and that she could not see well. He told Baker that he would kill the "bitch" if she did not get out of his apartment.

Bonnie Flowers testified that she lived in the same apartment complex as Petitioner. Petitioner had introduced Brady to her a few months prior to her death as his "ho." Flowers saw injuries on Brady's face. Later in the summer, she saw Brady sitting outside crying and saw that she was bleeding from the mouth.

The day before Brady's death, Flowers was with Medina at the apartment, and she heard Petitioner yelling at Brady to get out. Later, through the window she saw Petitioner grab Brady by the neck and try to force her into the apartment. She also saw Petitioner push Brady to the ground in his apartment but did not see Brady get up. Cesar Medina testified that he was with Flowers and heard the arguing on August 9, 2000. He testified that he could see through the window Petitioner swinging his fists.

The preliminary examination testimony of Jeffery McAuliffe, deceased at the time of trial, was read into the record. McAuliffe testified that on August 10, 2000, Petitioner came to his apartment door and asked for someone to call 9-1-1. McAuliffe went into Petitioner's apartment and saw Brady lying naked on the bed. McAuliffe attempted to perform CPR. He heard gurgling noises, but Brady was not breathing and he could not find a pulse. Petitioner said that he did not want

Brady to die and that he didn't want to murder her.

Courtney McMahon likewise arrived at the scene to help.  Brady looked dead to her.
Petitioner told her that Brady was a prostitute that he had just met and they had been drinking all
night.  McMahon later heard a resident of the apartment complex, Cesar Medina, say that he did not
like Petitioner and would lie if had to in order to get him out of the complex.  Sophie Rieger testified
that she also went inside Petitioner's apartment and saw a naked woman lying on the bed.  She could
not find a pulse on Brady.  While she assisted giving Brady CPR, she thought she was able to detect
a weak pulse.

Ben Upton, a paramedic, responded to the scene.  He found Brady on the bed, not breathing.
Upton was surprised by the amount of bruises on Brady's body.  Dr. Andrew Korcek testified that
he treated Brady at the hospital.  She was unresponsive and had extensive injuries in her chest area.
She also had a broken arm.  Dr. Korcek opined that Brady had been beaten into a coma.  Brady had
an initial short-time improvement at the hospital but her condition rapidly declined.  Her brain stem
was failing, and she had no chance of a recovery and would never breath on her own.  Petitioner told
Dr. Korcek that Brady had been gurgling and then collapsed.

Dr. Bernardino Pacris, the pathologist who performed the autopsy, testified that based on his
examination of Brady's body, she died because her brain was deprived of oxygen due to an
obstruction of her airway.  Dr. Pacris noted four broken ribs and a broken arm.

Terry Johnson testified that he knew Petitioner from prison.  Petitioner told Johnson about
his relationship with Brady and how he beat her.  Petitioner told Johnson that on the night of the
fatal beating, he had thrown Brady to the ground, slammed her on the bed, and then had sex with
her, but Brady did not move.  Petitioner admitted to Johnson that he had killed her.

-4-

Petitioner did not testify in his own defense, and the defense rested without calling any defense witnesses.  The jury found Petitioner guilty of second-degree murder, and the court sentenced him to 50-to-100 years in prison as a fourth-time habitual felony offender.

Petitioner then filed an appeal of right and raised four issues in the Michigan Court of Appeals in the brief filed by his appointed appellate counsel:

I. Petitioner's conviction must be vacated and the charges dismissed with prejudice based on the pre-arrest delay, the violation of the 180-day rule, and/or the violation of his constitutional rights to speedy trial.

II.  Petitioner is entitled to a new trial because his constitutional rights to the effective assistance of counsel were violated per se where he was under-represented at critical stages.

III.  The trial court erred in denying the defense's motion for mistrial after the jury sent a note indicating that it was deadlocked at 11-1 for a second-degree murder conviction and accusing the holdout of misconduct. Under the circumstances, making the jury continue deliberations was coercive of the lone holdout.

IV.  Defense counsel rendered ineffective assistance where he failed to request that the court instruct the jury on gross negligence involuntary manslaughter.

Petitioner also filed a supplemental pro se brief, raising an additional five claims:

I. Despite Petitioner's request and timely objection, did the prosecutor and defense counsel persuade the court to omit from juror consideration the sole theory for acquittal on all counts: that there was a reasonable doubt the Petitioner caused the death of Sandra Brady?

II. In two notes the jury requested clarification of the charge; counsel and the court agreed to direct the jury to rely on the photocopied charge as given: as Petitioner required the charge be amended to include a meaningful definition of causation, a request the court refused, is this reversible error?

III. Petitioner requested a definition of beyond a reasonable doubt that awards juror indecision to a defendant; was it error for the court to refuse to give the instruction?

IV. Petitioner was represented by three court appointed attorneys; as none motioned the court for an order that res gestae witnesses be produced in court, is there reversible error?

-5-

V. The initial 26 months delay from alleged crime to issuance of complaint was a fraudulent excuse to conduct an "investigation" in defiance of the fair investigation clause, Mich Const 1963, Art. 1, Sec 17; does this warrant a remand for an evidentiary hearing?

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished Opinion. *Parker, supra.*

Petitioner thereafter filed an application for leave to appeal in the Michigan Supreme Court that raised the same issues he raised in the Michigan Court of Appeals and an additional four new issues:

I. Petitioner's warrantless arrest on 10 August 2000 for domestic assault and great bodily harm met the standard for dismissal under MCL 780.131, et seq, and the Fourteenth Amendment as the statute, itself, is a state created liberty interest.

II. From the 10 August 2000 arrest of Petitioner to the 26 November 2002 issuance of a complaint for murder, the 27 months and 2 week delay offends the Sixth Amendment speedy trial clause of the US Constitution: the supremacy clause mandates dismissal of the murder conviction.

III. In Oakland County Michigan, court appointed lawyers do inadequate pretrial preparation; this record shows utter indifference by three appointed attorneys during the critical stage of trial preparation which was woefully inadequate for a first degree murder charge.

IV. Upon a showing counsel's representation offended the Sixth Amendment counsel clause, the relief must be tailored to cure the constitutional injury.

The Michigan Supreme Court denied leave to appeal by standard order. *People v. Parker*, 737 N.W.2d 506 (Mich. 2007).

Petitioner's amended habeas petition, as supplemented by order dated September 9, 2010, raises the following four claims:

I. Petitioner was denied his Sixth Amendment and due process rights based on the pre-arrest delay, violation of his constitutional rights to speedy trial, and the Fourteenth Amendment protection of MCL 780.131 et seq, the 180-day rule.

-6-

II. Petitioner is entitled to a writ of habeas corpus because his constitutional rights to the effective assistance of counsel were violated per se (*United States v. Cronic*) where he was under-represented at critical stages.

III. Petitioner was denied his Sixth and Fourteenth Amendment constitutional rights to effective assistance of counsel where appointed counsels failed to investigate this case.

IV. Petitioner was denied his Sixth and Fourteenth Amendment constitutional right to effective assistance of counsel where defense counsel failed to request that the court instruct the jury on gross negligence involuntary manslaughter.

### III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court

-7-

decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.  "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against

-8-

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## IV. Analysis

### A. Speedy Trial

Petitioner's first claim asserts that his rights were violated by the delay in bringing his case to trial.  Specifically, he claims that the two-year delay in filing the charges against him prejudiced his ability to defend himself because two witnesses at the apartment complex who would have testified that they did not hear fighting on the night of the victim's death left the state and could not be located.  He also claims that the over two-year delay between the filing of the charges and the trial violated his rights under the Speedy Trial Clause.  Finally, Petitioner asserts that his rights under Michigan's 180-day rule were violated.  None of these arguments have merit.

First, with respect to the claim that the prosecutor unfairly delayed in filing charges against him, the Due Process Clause of the Fifth Amendment provides a defendant limited protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also United States v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).  Regarding whether a preindictment delay violates due process, a court must decide whether the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency." *Lovasco*, 431 U.S. at 790 (internal

quotations omitted)."  The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for preindictment delay is warranted only when the defendant shows both substantial prejudice to his right to a fair trial and that the delay was intentionally imposed by the government to gain a tactical advantage.  *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992).  The prosecution of a defendant following an investigative delay does not necessarily deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796.

Here, the Michigan Court of Appeals rejected Petitioner's argument on the ground that he did not demonstrate that he was prejudiced by the prosecutor's delay in filing the charges against him:

> While there appears to be no justification for the delay in charging defendant in this case, defendant has not established that he was prejudiced by the delay. Defendant argues that he was prejudiced because he was precluded from establishing at trial that his former neighbors, the Nazarkos, who had since moved away and could no longer be located, did not hear any fighting in defendant's apartment. However, the detective who investigated this matter testified at trial that he had contacted the Nazarkos and other residents, and that only a few identified residents, which did not include the Nazarkos, reported hearing anything from defendant's apartment on the night of the incident.  Thus, the jury was aware that the Nazarkos had been contacted, and that they were not among the group of residents who reported hearing something from defendant's apartment.  Therefore, defendant has not established that he was prejudiced at trial by the failure to locate these witnesses and, accordingly, has not shown that dismissal was warranted due to prearrest delay.

*Parker, supra*, at 4-5.

This decision was not unreasonable.  It was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington, supra*.  The only potential prejudice identified by Petitioner is the allegation that Petitioner's neighbors, the Nazarkos, did not hear any fighting on the night in question,  Detective Babecki testified at trial that he had not received any reports regarding the fight

-10-

by of any of the residents besides those who had already testified at trial. In fact, Babecki specifically testified that he spoke with Mr. Nazarko and determined that he was home at the time of the incident. Accordingly, the jury could infer from this testimony that the Nazarkos did not hear any fighting.

Of the residents who did hear or see fighting, the most damaging testimony came from Cesar Medina and Bonnie Flowers, who testified that they saw the fight through Petitioner's window. This testimony was undermined in part by Detective Babecki's testimony that the position of the two apartments and the fact that Petitioner's blinds where mostly closed, led him to believe that Medina and Flowers could not have seen into the apartment.

In light of this evidence, Petitioner's defense would have benefitted from having the Nazarkos direct testimony. Had the Nazarkos testified that they did not hear any fighting, but that they were in a location to do so if any had occurred such as described by Medina and Flowers, this testimony would have further undermined Medina and Flower's testimony. Accordingly, the absence of the Nazarkos' testimony - assuming it would have been as favorable to Petitioner as he alleges - resulted in some prejudice.

However, the decision by the state appellate court that Petitioner failed to show *substantial* prejudice was not objectively unreasonable. There was overwhelming evidence presented at trial that Petitioner had beaten the victim in the recent past. The victim identified Petitioner to her son as the man who beat her. This statement was made when her son retrieved her from a shelter with staples in her head. Petitioner admitted to beating the victim to at least two men. And Petitioner's former employer was eyewitness to one beating.

This evidence must be considered together with the fact that Petitioner was the only person

-11-

in the apartment with the victim when - according to the medical testimony - she suffered from an assault that placed her in a coma leading to her death. Along with the medical evidence regarding the victim's bruising, four broken ribs, and broken arm, the potential exculpatory value of two witnesses who might have testified that they did not hear anything on the night in question from their apartment is greatly reduced. In light of all the evidence presented at trial, it was not objectively unreasonable for the Michigan Court of Appeals to conclude that Petitioner did not demonstrate substantial prejudice as a result of any preindictment delay. Habeas relief is therefore barred by operation of § 2254(d).

With respect to the Speedy Trial Clause claim, under *Barker v. Wingo*, 407 U.S. 514, 515 (1972), "a court should consider four factors in analyzing whether a defendant's right to a speedy trial was violated: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Girts v. Yanai*, 600 F.3d 576, 587-88 (6th Cir. 2010) (*citing Barker*, 407 U.S. at 530).

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. As the Sixth Circuit has provided regarding this factor:

> If the length of the delay is not "uncommonly long," then judicial examination ends. *Doggett v. United States*, 505 U.S. 647, 652 (1992). The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987). A delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors. *Doggett*, 505 U.S. at 652 n.1.

*Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005).

Here, the delay between the filing of charges against Petitioner and his trial was in excess

-12-

of two years.  He was charged on October 28, 2002, and his trial did not begin until April 14, 2005.

This delay is sufficient to necessitate an examination of the remaining three factors.

The Supreme Court has stated with regard to the different causes for delay:

. . . different weights should be assigned to different reasons.  A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531(footnote omitted).

Here, the bulk of the delays were the result of Petitioner's attorneys' requests for additional time and as result of Petitioner's requests for substitute counsel.  Both times Petitioner was granted substitute counsel, his new attorneys requested and were granted substantial adjournments to prepare for trial.  Petitioner's first attorney explicitly waived Petitioner's speedy trial rights in an effort to gain time to prepare a defense.  These delays cannot be attributed to the prosecution.

Only n a few delays are attributable to the prosecution.  There was a delay from January 16, 2003, until March 24, 2003, from the arraignment until the first pretrial that is not attributable to the defense.  There was also a delay from May 12, 2003, until July 10, 2003 - from a pretrial conference until the first motion for defense counsel to withdraw - that is not attributable to the defense.  Finally, there was a request for an adjournment made by the prosecutor at a November 8, 2004 hearing moving the trial date from November 30, 2004, until February 21, 2005.  These three delays account for about eight months of the over two-years it took to bring Petitioner to trial.

The prosecution was apparently prepared to go to trial on the first date set for trial on August 5, 2003, which would have been less that one-year from the filing of charges.  But Petitioner filed his first motion to substitute counsel less than a month prior to this trial date.  Defense motions were

filed again just prior to the second trial date set for April 6, 2004. Trial was then set for June 7, 2004, but was adjourned over the prosecutor's objection after Petitioner requested time to file additional motions. Further delays occurred as a result of Petitioner being appointed substitute counsel.

The delays in bringing Petitioner's case to trial were not the result of any "stall tactics" by the prosecutor. They were occasioned by Petitioner's decision to request multiple substitutions of counsel as each trial date approached.

The next factor to consider is Petitioner's assertion of his speedy trial rights. The Sixth Circuit has held that a defendant's unexplained four-month and three-week delay in asserting his speedy trial rights weighed against him. *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003); *see also United States v. Watford*, 468 F.3d 891, 907 (6th Cir. 2006) (weighing against the defendant his nearly five-month delay in asserting his speedy trial rights).

Here, Petitioner explicitly waived his speedy trial rights on November 26, 2002, when his first attorney stated: "Let me specifically waive, if there is an fact any 180 rule. I would waive that, any delay; we are consenting to it. So no speedy trial argument or anything like that or 180 day violation." Tr. 11/26/2002, at 123. The earliest date Petitioner asserted his speedy trial rights was on July 10, 2003, the date on which Petitioner's first attorney was ordered to withdraw and new counsel was appointed, in part, because Petitioner disagreed with his first attorney about waiving his speedy trial rights. This amounts to over an eight month delay in asserting his right to a speedy trial.

After Petitioner's first appointed counsel was removed from the case, there were multiple occassions where Petitioner personally asserted his right to a speedy trial in open court and accused

-14-

the prosecutor of delaying his trial.  But, again, Petitioner's assertion of his right must be contrasted with defense counsels' requests for adjournments and Petitioner's request to have a third attorney appointed.  Because of the circumstances and delay in Petitioner's invocation of his right to a speedy trial, this factor weighs in favor of the prosecution.

The next factor is prejudice caused by the delay.  "A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause." *Reed v. Farley*, 512 U.S. 339, 353 (1994).  Delay may cause varying types of prejudice:

> [U]nreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. *Barker*, 407 U.S., at 532; *see also Smith v. Hooey*, 393 U.S. 374, 377-379 (1969); *United States v. Ewell*, 383 U.S. 116, 120 (1966).  Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S., at 532.

*Doggett v. United States*, 505 U.S. 647, 654 (1992).

As discussed above, Petitioner was not substantially prejudiced by the delay in bringing his case to trial.  He was already in prison serving time on another sentence.  The only identifiable prejudice - the failure of the Nazarkos to testify - did not hamper Petitioner's ability to adequately prepare his case or challenge the fairness of the trial.  Accordingly, the state court decision that Petitioner's speedy trial rights were not violated was not objectively unreasonable.

Finally, with respect to Michigan's 180-day rule claim, even if Petitioner's claim had merit, a violation of a state speedy-trial law by a state court is non-cognizable on habeas review. *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) (discussing review of a violation of a state speedy trial law in the context of a habeas proceeding); *Stewart v. Nix*, 972 F.2d 967, 970 (8th Cir. 1992) (stating that a petitioner's rights under the Sixth Amendment are not affected by a state statute).  A

-15-

state-court violation of Michigan's 180-day rule does not, in itself, create a violation of the Federal

Constitution. *See, e.g., Wells v. Petsock*, 941 F.2d 253, 256 (3rd Cir. 1991). Therefore, Petitioner

is not entitled to habeas relief for any claimed violation of Michigan's 180-day rule.

### B.  Denial of Counsel at Critical Stage

Petitioner claims that he was denied his right to counsel at critical stages of the proceedings.

Petitioner identifies four pretrial proceedings that were conducted in the absence of counsel.  He also

alleges that his trial counsel's pretrial preparation was so inadequate that it rose to the level of a

complete deprivation of counsel.  Respondent asserts that the state court adjudication of these claims

did not involve an unreasonable application of clearly established Supreme Court law.

The Michigan Court of Appeals denied these claims on the merits:

> Defendant first argues that his attorney's absence at four pretrial hearings deprived him of the right to counsel at a critical stage of the proceedings. "It is well established that a total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal." *People v. Willing*, 704 N.W.2d 472 (Mich. App. 2005).  A critical stage generally means "a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 695-696 (2002).  "[T]he accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *People v. Kurylczyk*, 505 N.W.2d 528 (Mich. 1993), *quoting United States v. Wade*, 388 U.S. 218, 226 (1967).

> In this case, none of the four hearings at which counsel was absent involved a critical stage of the proceedings.  The court adjourned the first two hearings and only discussed or set trial dates at the latter two.  Counsel's absence from the pretrial hearings did not affect defendant's right to a fair trial.  Defendant has not shown that he was deprived of the right to counsel at a critical stage of the proceedings. *Kurylczyk, supra*.

> We also reject defendant's argument that he was completely deprived of the right to counsel due to his attorneys' failure to investigate this matter. Critical stages are not limited to formal appearances before a judge and can include pretrial preparation. *Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir. 2003).  The pretrial period is a critical stage because it encompasses counsel's duty to investigate the

case. *Id.* A complete deprivation of counsel at the pretrial stage involving trial preparation generally arises from counsel's failure to consult with the defendant. *Id.* at 743-744. In *Mitchell*, the Court held that the defendant was denied the assistance of counsel during the pretrial stage because his attorney consulted with him for only six minutes over three meetings and was also suspended from the practice of law during the month preceding trial.

Here, however, defendant admitted that he met and consulted with his trial attorney for at least two hours, not counting discussions at court hearings or through correspondence. This case is thus distinguishable from *Mitchell*. Defendant has failed to show a complete deprivation of the right to counsel during the pretrial stage.

*Parker, supra*, at 7-9.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI. The "plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defense.'" *United States v. Wade*, 388 U.S. 218, 225 (1967). A criminal defendant has the right to the advice of counsel at "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at 226.

The Supreme Court subsequently began referring to any stage at which the right of counsel attached as a "critical stage" of the prosecution. *See Michigan v. Jackson*, 475 U.S. 625, 632 n.5 (1986). A criminal defendant has the right to the assistance of counsel at any "critical stage" of the criminal justice process. If a criminal defendant is deprived of counsel at a "critical stage" of the process, prejudice of constitutional magnitude is presumed to have resulted therefrom. *See Olden v. United States*, 224 F.3d 561, 568 (6th Cir. 2000) (*quoting United States v. Cronic*, 466 U.S. 648, 659 (1984) ("a trial is unfair if the accused is denied counsel at a critical stage of his trial").

The Supreme Court has defined "critical stages" as "proceedings between an individual and

agents of the State (whether 'formal or informal,  in court or out,' *see United States v. Wade*, 388 U.S. 218, 226 (1967)), that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or . . . meeting his adversary.'" *Rothgery v. Gillespie County*, 554 U.S. 191 (2008) (*quoting United States v. Ash*, 413 U.S. 300, 312-13 (1973)).  The pretrial period is a critical stage for Sixth Amendment purposes, *Powell v. Alabama*, 287 U.S. 45, 57 (1932), "because it encompasses counsel's constitutionally imposed duty to investigate the case." *Mitchell v. Mason*, 325 F.3d 732, 743 (6th Cir. 2003).

The Supreme Court has also held that for denial of counsel during pretrial or preliminary proceedings, "the test to be applied is whether the denial of counsel . . . was harmless error." *Coleman v. Alabama*, 399 U.S. 1, 11 (1970) (citations omitted); *see also  Yarborough v. Keane*, 101 F.3d 894, 897 (2d Cir. 1996) ("a less significant denial of the right to counsel (at a preliminary hearing) has been held to be subject to harmless error review").  The Sixth Circuit  has also applied a harmless error analysis on habeas review of claims regarding the denial of counsel during preliminary hearings of state criminal proceedings. *See Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985); *McKeldin v. Rose*, 631 F.2d 458, 460-61 (6th Cir. 1980).

In *Van v. Jones*, 475 F.3d 292, 311-312 (6th Cir. 2007), the Sixth Circuit articulated the following in order to determine whether an event rises to the level of a critical stage of the proceedings such that a habeas petitioner need not demonstrate actual prejudice:

> 1) A critical stage presents a moment when "[a]vailable defenses may be irretrievably lost, if not then and there asserted." [*Hamilton v. Alabama*, 368 U.S. 52, 53 (1961)].
>
> 2) A critical stage is one "where rights are preserved or lost." [*White v. Maryland*, 373 U.S. 59, 60 (1963)].
>
> 3) Counsel's assistance is guaranteed "whenever necessary to mount a meaningful

-18-

defence [sic]." [*United States v. Wade*, 388 U.S. 218, 225 (1967)].

4) Determination as to "whether a hearing is a 'critical stage' requiring the  provision of counsel depends . . . upon an analysis 'whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice.' " [*Coleman v. Alabama*, 399 U.S. 1, 9 (1970)(*quoting Wade*, 388 U.S. at 227)].

5) A critical stage holds "significant consequences for the accused." [*Bell v. Cone*, 535 U.S. 685, 696 (2002)].

6) In *Lundberg*, our court defined a "floor" for analysis as to whether a phase in a criminal proceeding may be considered critical. We do not label as a critical stage "proceedings where even the likelihood of later prejudice arising from the failure to appoint is absent." [*Lundberg v. Buchkoe*, 389 F.2d 154, 158 (1968)(*quoting DeToro v. Peppersack*, 332 F.2d 341, 343-44 (4th Cir.1964))].

*Van*, 475 F.3d at 312.

Synthesizing these principles, the Court in *Van* found that in order to assess if a given portion of a criminal proceeding is a critical stage, a court "must ask how likely it is that significant consequences might have resulted from the absence of counsel at the stage of the criminal proceeding." *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007).  Whether a proceeding is a critical stage depends on whether there was a reasonable probability that Petitioner's case *could* suffer significant consequences from his total denial of counsel at that proceeding.  *Id.* at 313.

Petitioner identifies four court proceedings in which he was not represented by counsel that he claims were "critical proceedings": (1) September 13, 2004; (2) October 4, 2004; (3) November 1, 2004; and (4) November 8, 2004.

At the September 13, 2004, proceeding, the courtroom prosecutor informed the court that both the prosecutor and the defense attorney were in trial in another courtroom.  The court adjourned the case for two days.  Petitioner was present and indicated that he wished to put something on the record, but the trial court stated, "I don't want you to say something without [defense counsel].  He'll

-19-

handle it."

At the October 4, 2004, date, Petitioner's case was called again.  The courtroom prosecutor informed the court that the attorneys were not present.  Petitioner indicated that he had been appointed a new attorney and wanted certain motions to be filed, he complained that the case had been going on for two years, and he wanted to be returned to the Department of Corrections pending further proceedings.  The court stated: "[Petitioner's] been around for a long time and he has a right to a speedy trial."  The trial court placed a hold on Petitioner to stay at the jail to ensure that his new counsel would be able to consult with him about motions.  The court stated that it wanted to receive some direction from the attorneys "as to when you'll be ready for trial.  And I'll ask [defense counsel] that he sees you within the next 72 hours."

At the November 1, 2004,  proceeding, Petitioner's case was again called without the trial prosecutor or defense counsel being present.  As the court and the courtroom prosecutor sought to determine why the case had been placed on the day's docket, Petitioner interjected that he had filed pro se motions, and asserted that his case had been languishing despite his repeated demands for a speedy trial.  The courtroom prosecutor responded that a trial date had been set for November 30.  The court informed Petitioner that his counsel would argue his speedy trial claim before that date.

Finally, at the November 8, 2004, hearing, the prosecutor appeared and immediately informed the court that Petitioner's counsel was currently in trial in another courtroom.  Nevertheless, the prosecutor requested that trial be moved from November 30, 2004,  to mid-February 2005.  The trial court promptly set trial for February 21, 2005.  Petitioner then stated that he objected to the adjournment of trial on speedy trial grounds.  The prosecutor stated that the court had already ruled, and asked the court to move on to the next case.  Petitioner requested that he be

-20-

returned to the Department of Corrections, and after ascertaining that there was not a need for another conference prior to trial, the court granted the request.

Essentially, nothing of substance occurred at the first three proceedings. While Petitioner attempted to inject substance into the first three proceedings by asserting that his speedy trial rights were being denied, the trial court did not address the matter and informed Petitioner that those types of matters would be handled by his attorney. These first three proceedings were not "critical stages."

The fourth hearing date presents a more difficult question. At that hearing the prosecutor was present but defense counsel was not, and the prosecutor moved for an adjournment of the trial date from November 30, 2004, to February 21, 2005. No reasons for the requested adjournment were given. The state trial court docket sheet indicates, "Adjourn for investigation/discovery trial." The court granted the adjournment without receiving any input from defense counsel, who was in another courtroom. Petitioner, acting on his own, objected to the adjournment on speedy trial grounds. The prosecutor replied that the court had already ruled, and the adjournment stood. Unlike the previous three proceedings, this fourth proceeding contained some substantive action: the prosecutor moved the trial date over Petitioner's pro se objection.

Nevertheless, this was not a critical stage of the proceedings. There is no reasonable probability that Petitioner's case could have suffered significant consequences from his total denial of counsel at the fourth proceeding. Petitioner did not lose the right to contest the delay in bringing him to trial. In fact, the trial court had already heard and denied a motion on that basis on August 10, 2004. Petitioner did not lose an opportunity to be tried earlier. Petitioner does not identify any other potential significant consequence that he suffered as a result of his counsel's absence at this proceeding. Because no significant consequences could have resulted from the absence of counsel

-21-

at the November 8, 2004, hearing, it was not a "critical stage" that entitles Petitioner to automatic reversal of his conviction due to his counsel's absence.

Petitioner also claims that his three appointed attorneys' pretrial performance was so lacking that he is entitled to relief without a showing of actual prejudice. Petitioner's position is that he wanted his attorneys to move his case forward quickly, and he wanted them to obtain a medical expert to challenge the prosecution's theory that the victim died as a result of an assault.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer*, 286 F. 3d 851, 860 (6th Cir. 2002)(*quoting Cronic*, 466 U.S. at 659). In *Mitchell v. Mason*, 325 F. 3d 732, 741 (6th Cir. 2003), the Sixth Circuit held that there had been a complete denial of counsel where the defendant's attorney spent approximately six minutes in the course of three separate meetings with the defendant in the "bull pen" prior to the start of trial. The court in *Mitchell* presumed that counsel's performance was prejudicial "because [the defendant] was denied the presence of counsel during the critical pre-trial stage." 325 F.3d at 742 (emphasis added). The court relied on the fact that counsel had met with Mitchell only once prior to trial for six minutes, and effectively made "no effort to consult with the client." *Id.* at 744. The *Mitchell* court distinguished the case before it from *Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989), on the basis that defense counsel's meeting with the defendant in that case for approximately 30 to 45 minutes prior to trial precluded a finding of per se prejudice.

The present case does not involve a situation where Petitioner's attorneys were completely absent during the critical pretrial preparation period. As the Michigan Court of Appeals found,

"defendant admitted that he met and consulted with his trial attorney for at least two hours, not counting discussions at court hearings or through correspondence."   This fact takes Petitioner's claim out of the class of cases where prejudice can be presumed and puts it into the class of cases where prejudice must be affirmatively shown.  The argument that Petitioner was actually prejudiced due to his attorneys' poor pretrial performance is the basis for his third habeas claim.  Petitioner's second habeas claim does not provide a basis for granting habeas relief.

### C.  Ineffective Assistance of Counsel - Failure to Investigate

Petitioner asserts in his third claim that his trial counsel failed to adequately investigate his defense that the victim did not die as a result of an assault, and that there is a reasonable probability that the result of his trial would have been different had this defense been presented.  Petitioner's theory appears to be that the victim suffered from asphyxiation due to the position of her head and neck during consensual anal intercourse while she was highly intoxicated.  Petitioner also asserts that his counsel should have used a private investigator to interview Mike Knoke and other residents of the apartment complex.   Respondent asserts that the state courts reasonably adjudicated the claim.  The Michigan Court of Appeals denied these claims on the merits:

> Defendant also argues that counsel was ineffective.  Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v. Effinger*, 536 N.W.2d 809 (Mich. App. 1995).  To establish ineffective assistance of counsel, a defendant must show that counsel's performance was so deficient that counsel did not function as the counsel guaranteed by the Sixth Amendment, and that the deficient performance prejudiced the defense to the point where the defendant was deprived of a fair trial and a reliable result. *People v. Johnson*, 545 N.W.2d 637 (Mich. 1996).  The defendant must also show "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Id.*

> Claims of ineffective assistance of counsel involve a mixed question of law and fact.  The trial court must first find the facts, and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of

-23-

counsel. *People v. Matuszak*, 687 N.W.2d 342 (Mich. App. 2004). This Court reviews the trial court's factual findings for clear error, and the trial court's constitutional determinations are reviewed de novo.

The primary basis for defendant's claim of ineffective assistance of counsel is his claim that his attorneys failed to investigate all relevant matters. The failure of counsel to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v. McGhee*, 709 N.W.2d 595 (Mich. App. 2005). It is counsel's duty to make an independent examination of the facts, laws, pleadings and circumstances involved in the matter and to pursue all leads relevant to the issues. *People v. Grant*, 684 N.W.2d 686 (Mich. 2004) (opinions by Kelly, J., and Taylor, J.). A sound trial strategy is one based on investigation and supported by reasonable professional judgments. *Id.* "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v. Marcus Davis*, 649 N.W.2d 94 (Mich. App. 2002). In this regard, defendant must overcome the strong presumption that his attorney exercised sound trial strategy. *Id.*

In his motion in the trial court, defendant asserted that all three of his attorneys failed to investigate his case in that they did not (1) seek the appointment of an independent pathologist regarding the cause of death, (2) use an investigator to interview Mike Knoke, (3) use an investigator to interview the apartment manager and other residents of defendant's apartment complex, and (4) look into Brady's prior medical records. Defendant, however, never provided any offer of proof to factually support his claim that an investigation of these matters would have yielded favorable evidence. n1 Furthermore, in the absence of an appropriate offer of proof, the trial court did not err by failing to conduct an evidentiary hearing on this issue.

n1 Indeed, defendant now acknowledges on appeal that Knoke could not have provided any relevant information about this crime.

A defendant who requests the right to an evidentiary hearing under *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), should ordinarily be granted the opportunity to make a separate record to support his claims. However, a defendant is obligated to make some showing that a hearing is necessary when moving for a new trial. Here, the required showing was not made. We therefore also decline defendant's request to remand this case for an evidentiary hearing. This Court will not require a trial court to conduct a hearing regarding the effective assistance of counsel without a proper offer of proof. See, e.g., *People v. Simmons*, 364 N.W.2d 783 (Mich. App. 1985).

*Parker, supra*, at 10-13.

-24-

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly

-25-

strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

In this case, Petitioner first raised his ineffective assistance of counsel claim in the trial court when his appointed appellate attorney filed a motion for a new trial and a request for an evidentiary hearing in the state trial court. The motion primarily raised claims regarding the delay in bringing Petitioner to trial, but it also asserted that Petitioner's three trial attorneys did not effectively represent him prior to his trial. At no point during the motion hearing, however, did appellate counsel make an offer of proof as to how Petitioner would show that he was actually prejudiced by his counsels' pretrial performance. The trial court denied the motion for new trial and denied his request for an evidentiary hearing.

In the Michigan Court of Appeals, Petitioner's appellate counsel's brief also did not attempt to demonstrate actual prejudice but relied on the argument that above - claiming that the lack of pretrial preparation constituted a constructive denial of counsel. Petitioner acting in pro per filed a motion for remand and submitted a supplemental brief that raised the claim under the *Strickland* standard, but he did not make any offer of proof as to how he was actually prejudiced.

Accordingly, when the Michigan Court of Appeals decided the claim, it found that because of the absence of any proffer of what a more thorough pretrial investigation would have produced, Petitioner had not demonstrated actual prejudice. The state appellate court likewise found that without any proffer, Petitioner had not even demonstrated entitlement to an evidentiary hearing on the claim. This decision was not objectively unreasonable.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support,

do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has offered no evidence, either to the Michigan courts or to this Court, as to what evidence his trial counsel would have been able to present with a more thorough pretrial investigation. There are no affidavits from other residents offering exculpatory versions of the events. There is no proffered medical opinion that the victim died in anyway other than that described by the emergency room physician and the pathologist. There is nothing of record showing that Petitioner was prejudiced by his counsel's pretrial investigation and preparation for trial. In the absence of such proof, Petitioner is unable to establish that he was prejudiced so as to support his ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner is not entitled to an evidentiary hearing to support his claim in this Court, because he failed to develop these facts in his state court proceedings. *See* 28 U.S.C. § 2254(e)(2). A petitioner "has failed to develop" a factual basis of a claim in state court where there is "a lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence requires that the prisoner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. In Michigan, to develop the factual basis for a claim not already developed, a defendant must file a motion for a new trial and evidentiary hearing in the trial court or a motion to remand in the court of appeals. *See People v. Ginther*, 390 Mich. 436, 443-44, 212 N.W.2d 922 (1973). Although Petitioner requested an evidentiary hearing in his motion for new trial and in his pro se motion to remand, the requests were not made in "the manner prescribed by state law." Michigan Court Rule 7.211(C)(1) requires that a motion for remand be supported by an affidavit or offer of proof regarding the facts to be established at a hearing, neither of which Petitioner included in his

applications.  *See* MICH. CT. R. 7.211(C)(1).  Therefore, Petitioner is barred by § 2254(e)(2) from

obtaining an evidentiary hearing in federal court.  *c.f. Ware v. Harry*, 636 F. Supp. 2d 574, 593 (E.D.

Mich. 2008) (finding the petitioner was entitled to evidentiary hearing where he filed motion to

remand in Michigan Court of Appeals and supported motion with affidavit detailing conversations

with counsel regarding trial strategy, and state court denied motion on merits, not procedural

grounds).

Petitioner's third habeas claim does not provide a basis for granting habeas relief.

### D.  Ineffective Assistance of Counsel - Failure to Request Jury Instruction

Petitioner's fourth claim asserts that his trial counsel was ineffective for failing to request a

jury instruction on the lesser charge of involuntary manslaughter.  Specifically, Petitioner asserts

that although the trial court instructed the jury on the "intent to injure" version of involuntary

manslaughter, it did not instruct the jury that manslaughter could also be found where there is "gross

negligence."  Respondent asserts that the state court adjudication of the claim was not objectively

unreasonable.  The Michigan Court of Appeals denied the claim on the merits:

> Defendant next argues that his attorney was ineffective for not requesting an
> instruction on involuntary manslaughter based on gross negligence as a
> lesser-included offense.  We disagree.  Because defendant did not raise this issue in
> the trial court, our review is limited to mistakes apparent from the record. *People v.
> Matuszak, supra.*
>
> Defendant argues that his attorney should have requested an instruction for
> involuntary manslaughter based on gross negligence, as provided in CJI2d 16.10 and
> 16.18.  "Manslaughter is a necessarily included lesser offense of murder." *People
> v. Gillis*, 712 N.W.2d 419 (Mich. 2006).  Therefore, when a defendant is charged
> with murder, an instruction for voluntary or involuntary manslaughter must be given
> if supported by a rational view of the evidence. *Id.* at 137-138.
>
> Involuntary manslaughter can be based either on an intent to injure or gross
> negligence. *Id.* at 138.  CJI2d 16.10 includes both forms of involuntary
> manslaughter.  In this case, the trial court instructed the jury on involuntary

manslaughter involving assault and battery, or an intent to injure. In contrast, gross negligence is not based on an intent to injure, but rather the willful failure to exercise ordinary care to avoid injury to another.

Here, a rational view of the evidence did not allow the jury to find that defendant could have caused Brady's death through gross negligence while having anal sex with the victim, as defendant now claims. A rational view of the facts supported an instruction based upon intent to injure because there was evidence that defendant assaulted the victim, and it was up to the jury to determine defendant's state of mind for purposes of determining if he was guilty of either involuntary manslaughter, second-degree murder, or first-degree murder. Because the evidence did not support an instruction for involuntary manslaughter based on gross negligence, defense counsel was not ineffective for failing to request the instruction.

*Parker, supra*, at 16-17.

Petitioner asserts that a rational view of the evidence could have led jurors to believe that the victim died during anal sex, speculating that the position of the victim's neck as she lay on her stomach together with the level of her intoxication, might have caused her to asphyxiate. According to Petitioner, if the jury viewed the evidence in this light, he would have been guilty of only gross-negligence involuntary manslaughter.

A rational review of the evidence would not have allowed the jury to find Petitioner guilty of only manslaughter had this theory and instruction been given to them. By finding Petitioner guilty of second-degree murder, the jury necessarily concluded beyond a reasonable doubt that Petitioner either intended to kill the victim, intended to cause great bodily harm, or intended to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 345 N.W.2d 150, 151 (Mich. 1984). The alternate jury instruction would not have undermined in any way the evidence that the jury chose to accept indicating that Petitioner was guilty of the greater offense. On habeas review, a petitioner may not establish that his attorney was ineffective for failing to request a lesser-included offense

instruction where the evidence was sufficient to support the greater offense, and Petitioner does not challenge the sufficiency of the evidence to support his murder conviction. *Fischer v. Morgan*, 83 Fed. App'x 64, 66-67 (6th Cir.2003).

Petitioner's fourth claim does not provide a basis for granting habeas relief.

### V. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.

The Court concludes that a certificate of appealability is warranted in this case with respect to two of Petitioner's claims. Although the Court finds that Petitioner's first claim was reasonably adjudicated by the state courts, the substantial delay in bringing Petitioner to trial, in conjunction with Petitioner's repeated personal complaints to the trial court regarding the delays, would allow reasonably jurists to differ on the merit of the claim. Likewise, given the apparent conflicting precedent regarding what constitutes a "critical state" of a proceeding, reasonably jurists might

disagree on the merit of Petitioner's second claim.  Accordingly, Petitioner is granted a certificate of appealability with respect to his first and second claims.  Reasonable jurists would not disagree with the Court's resolution of Petitioner's third and fourth claims.  Therefore, a certificate of appealability will be denied with respect to those claims.

## VI. Conclusion

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus is

DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED with respect

to Petitioner's first and second claims.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  November 30, 2011

I hereby certify that a copy of the foregoing document was served upon Jack Parke #236023, 3001
Newberry Avenue, Newberry, MI 49868 and counsel of record on November 30, 2011, by electronic
and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager